**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO: 17-20805-CR-KMW

UNITED STATES OF AMERICA

    Plaintiff,

vs.

**JULIO CESAR ALVAREZ-MARTINEZ,**

    Defendant.

_____/

**SENTENCING MEMO**

Following trial, at which he testified, Julio Cesar Alvarez-Martinez was convicted for his possession with intent to distribute a large quantity of cocaine. The facts established that he and a codefendant picked up three other codefendants and the cocaine from a boat, which was dead in the water. There was certainly no dispute that Julio possessed the cocaine. His defense was that he intended to turn it and the three codefendants over to Guatemalan authorities. Because the court heard the evidence presented at the trial, counsel finds no need to restate the facts.

**GUIDELINE COMPUTATION**

Because of the quantity of cocaine, the base offense level is properly determined by the United States Probation Officer as a level 38. To this is added a two level enhancement pursuant to USSG 2D 1.1 ( b) (3) (C), because he was the

"captain." While case law, concededly, supports the scoring, it should be noted that his "captaining" consisted of holding and moving the handles (one for each engine) of the outboard motors. Admittedly, this has been upheld, yet, we submit the purpose of this enhancement of the offense level is akin to the enhancement for special skill. It stretches the obvious purpose of adding levels to apply it to one whose conduct is at best at the outer edges of the rationale for the enhancement. Nevertheless, as we stated, *supra*, it is properly scored. So, we would ask the Court to consider these arguments in determining the ultimate sentence, especially with respect to the influence of the guideline recommendation.

Additionally, the USPO has not added any points for obstruction of justice, but, has directed the court to make that determination. Her statement foreshadows the anticipated government argument in favor of this two level enhancement.

First, the PSR quotes the government as claiming the defendant sought to suborn perjury. We strenuously deny that allegation and suggest it has no basis in fact. Inasmuch as Mr. Bautista testified at trial, one would have expected the allegation to have been memorialized by testimony. It was not. What was stated was that on the Coast Guard cutter to which they were first taken and in the presence of members of the Coast Guard staff, Julio implored Mr. Bautista to tell them (the Coast Guard) that he had picked them up and was taking the drugs to the authorities; a position he has adhered to from his arrest to the present.

Additionally, the government claims perjury by the defendant, presumably, other than the fact that the jury convicted him. While there were contested facts in the context of his testimony *vis-a-vis* the government witnesses' rebuttal, we argue that these discrepancies do not rise to the level of perjury; a necessary specific finding which must support the enhancement. The Supreme Court has stated:

> A witness testifying under oath or affirmation violates the statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory

**US v Dunnigan**, 507 US 87, 94 (1993).

### 3553 (A)

In 2011, the court reiterated the principle that the sentencing judge should sentence the individual as well as the crime. **Pepper v US**, 131 SCT.1229 (2011). There, they said "Underlying this tradition is the principle that the punishment should fit the offender and not merely the crime." id at 1240.

This concept has been codified in 18 USC 3553 (a), which commands a sentence "sufficient, but not greater than necessary." The court is directed to balance

the seriousness of the offense and need for deterrence with the character of the person who stands before her.

With respect to the offense, we certainly recognize the seriousness of Julio's conduct, no matter where those drugs would have ultimately landed. Obviously, a prison sentence of some duration is necessary to reflect the seriousness and to encourage respect for the law. And when people similar to Julio in his village note that he is gone for some period of time, because he got involved in this activity, hopefully that will temper any impulse on their part to do the same for the money that is offered. Thus, some period of imprisonment will "afford adequate deterrence." 18 USC 3553 (a) (2) (B).

Julio fits the profile of the typical defendant who is prosecuted in our court in these MDEA cases. He is not the "kingpin" or even management. They remain safely ensconced in Central and South America treating the Julio's of their world as cannon fodder. If a boatload is seized, it merely reduces their engorged profits. As for the loss of these impoverished boys, frankly, that's not their problem. They take no responsibility for their future whatsoever.

And, certainly, Julio fits the definition of an impoverished throw away. He has known poverty of unimaginable levels his entire life. While it is true that he avoided physical or mental abuse, yet, he was raised, for the most part, by a single mother and lived without running water or electricity. He has suffered the violent loss of his

father and a son. He has been a victim of violence himself resulting in the prominent scar on his face which we're sure the court noted during trial.

To his credit, he has sought and obtained employment, primarily to provide for his children. So long as he is incarcerated here, this obvious source of support is gone. Thus, they are victims also.

In determining what is sufficient but not greater than necessary, we strongly suggest that the guideline range which can run, in the best case scenario, from 235 months to, in the worst case scenario, life imprisonment, is the very essence of greater than necessary. Of course the court is restrained from any sentence below the minimum mandatory 120 months. However, his imprisonment, for however long it is, is not his only punishment. He is now, and will be for the foreseeable future, isolated from his lifelong environment. He will probably have little or no telephonic contact with his wife, children, mother, siblings and friends. He simply has no money for commissary, much less telephone calls. On visitation days, he will sit and watch other inmates go to the visitation room. Not Julio. He's alone. And he is incarcerated on a different continent from his family and friends, who are equally impoverished, assuring the inability of anyone from seeing or communicating with him. We submit that this should be considered when assessing the appropriate sufficiently just sentence for Julio Cesar Alvarez Mendez.

In light of the above, we would ask this court to sentence Julio Cesar Alvarez

Mendez to a sentence of imprisonment not that far from the minimum mandatory 120 months.

          Respectfully submitted,

          */s/ Jack R. Blumenfeld*
          Jack R Blumenfeld
          Attorney for defendant.
          Gables International Plaza
          2655 Le Jeune Road, Suite 700
          Coral Gables, FL 33134
          Tel: (305) 670-3311
          Fax: (305) 670-7003
          Florida Bar No. 103577