UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NUMBER 17-20805-CR-KMW

UNITED STATES OF AMERICA

    **vs.**

JULIO CESAR ALVAREZ-MARTINEZ,

       Defendant

---

SENTENCING HELD 8-15-18
BEFORE THE HONORABLE KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT COURT JUDGE

---

APPEARANCES:

FOR THE UNITED STATES:    KEVIN QUENCER, A.U.S.A.
          SHARAD MOTIANI, A.U.S.A.
          **99 N.E. 4th Street**
          Miami, FL  33132

FOR THE DEFENDANT:    JACK R. BLUMENFELD, ESQ.
          **2655 LeJeune**
          Coral Gables, FL 33134

REPORTED BY:    PATRICIA SANDERS, RPR
          United States Court Reporter
          400 North Miami Avenue, Suite 11-3
          Miami, FL  33128
          T: 305.523.5528
          patricia_sanders@flsd.uscourts.gov.

THE COURTROOM DEPUTY:  This Court calls Case No. 17-20805-CR-WMS; United States of America versus Julio Cesar Alvarez Martinez.

Counsel, if you would please state your appearances for the record.

MR. QUENCER: Good morning, Your Honor, Kevin Quencer and Sharad Motiani on behalf of the United States.

THE COURT:  Good morning, Mr. Quencer.

MR. BLUMENFELD: Good morning, Your Honor, Jack Blumenfeld on behalf of Mr. Alvarez Martinez; who is present in court.

THE COURT:  Good morning, Mr. Blumenfeld; good morning Mr. Alvarez Martinez.

If I could have appearances on behalf of Probation.

MS. PROSPERE:  Good morning, Your Honor, Sherika Prospere on behalf of Probation.

THE COURT:  Good morning, Ms. Prospere.  And you may all be seated.  All right. We are here today for sentencing in Mr. Alvarez Martinez's case.

Mr. Blumenfeld, I have received your sentencing memorandum, and then last evening I received the sentencing memorandum of the Government.

But let me start by asking you if you have reviewed the PSI and any addendum with your client?

MR. BLUMENFELD: Yes, Your Honor.

10:01  1    THE COURT:  Are there any factual matters that need to

10:01  2 be edited or addressed?

10:01  3    MR. BLUMENFELD: No, Your Honor.

10:01  4    THE COURT:  And I don't believe Mr. Alvarez Martinez

10:01  5 lodged any objection to the guideline calculation in the PSI.

10:01  6    MR. BLUMENFELD: Correct, Your Honor.

10:01  7    THE COURT:  I will turn now to the Government. My

10:01  8 understanding, Mr. Quencer, is you believe that the guideline

10:02  9 offense level should be a 42 and not a 40 owing to your

10:02  10 assessment of Mr. Alvarez Martinez's obstruction of justice.

10:02  11    MR. QUENCER: We are not going to ask for a sentence

10:02  12 that high, but legally speaking I believe a 42 would be

10:02  13 appropriate.

10:02  14    THE COURT:  Did you wish to discuss this any further

10:02  15 or present any further evidence or just rely on the transcript

10:02  16 excerpts?

10:02  17    MR. QUENCER: I think I can make this very, very quick

10:02  18 because Your Honor has read what I filed last night in terms of

10:02  19 the transcripts.

10:02  20    THE COURT:  Correct.

10:02  21    MR. QUENCER: On pages 15 and 16 of the exhibit that I

10:02  22 attached to my memorandum, the trial transcripts which were

10:02  23 prepared by your court reporter, as well as on page 31 it is

10:03  24 very clear that Mr. Bautista testified that this defendant

10:03  25 asked him to lie 10 to 13 times.

10:03  1       As far as the captain enhancement goes, this defendant

10:03  2  admitted he was at the controls at pages 44 and 45.

10:03  3       He straight up admitted to it when Mr. Motiani asked

10:03  4  him the question as to whether he was the captain of the boat.

10:03  5  His answer to that was yes on page 60.

10:03  6       And the testimony of Mr. Bautista made it clear there

10:03  7  was someone who was in charge here; and it was the defendant.

10:03  8       So that is the Government's position, Your Honor.

10:03  9       THE COURT:  All right. Mr. Blumenfeld

10:04  10      MR. BLUMENFELD: First of all, Your Honor, as to the

10:04  11  testimony and the discrepancies and differences that occurred

10:04  12  during the trial, I do not believe that my client's testimony

02:03  13  rises to the level of willful perjury.

10:04  14      So to tell essentially the story that he told on the

10:04  15  witness stand as to what happened out there, again, I do not

10:04  16  believe that rises to the level of perjury.

10:04  17      Although Mr. Bautista testified that my client told

10:04  18  him that he needed to lie about what happened out there -- and

10:05  19  that it happened in front of the Coast Guard officers -- we

10:05  20  would dispute that happened and the way they say it happened.

02:04  21      And I don't want to belabor the point, Judge, but I

02:04  22  think it should be difficult -- and this is my opinion -- it

02:04  23  should be difficult to get this kind of enhancement simply

10:05  24  because a defendant testifies and the testimony is rejected by

10:05  25  a jury because of a guilty verdict.

THE COURT:  Well, where I am focused is not so much on Mr. Alvarez Martinez's recitation of the facts or what his version of the truth was but his continued insistence to Mr. Bautista to advance that story which is problematic.

I think if it were just a matter of the defendant testifying contrary to the Government's theory that would be one thing. But it's not just that; it is his insistence that others testify that way as well.

Having reviewed the transcript of the trial -- and I recalled the testimony at trial as well -- I believe that an accurate guideline calculation would take into account an obstruction enhancement.

So I will sustain the Government's objection and ask Probation to added the additional two points to its guideline calculation; which brings us then to a level 42 with a criminal history category one with an advisory guideline range of 360 to life.

But let me be clear from the start of our 3553 discussion; having stated that that is an accurate numeric calculation I by no means believe that that sentencing range is sufficient but not greater than necessary to punish the conduct here.

And so I think everyone should know I am starting from that premise. All right. I have reviewed the cases, the recent cases of a similar type, that have been decided in this Circuit

1   and I am aware of the underlying facts and so where I am

2   focused now is a much lesser range.

3          And I have certain things that I believe account for

4   that. But, Mr. Blumenfeld I will let you start with your 3553

5   argument.  And I know that you are advocating for a 120 month

6   sentence for your client, but I don't believe I am there.

7          Again, I am nowhere 360. Because of the cases I have

8   read, the amount of drugs involved, the background of your

9   client -- he apparently has a medical issue involving his eye,

10  and so I am factoring that all in as well.

11         MR. BLUMENFELD:   Yes, Your Honor. Obviously sentencing

12  is not an exact science, and even the guidelines fail somewhat.

13  I have outlined his background and my feelings about how that

14  factors into what his sentence should be.

15         In my sentencing memorandum, Your Honor, I argued that

16  a sentence closer to the minimum mandatory of 120 months is

17  appropriate.

18         I did not specify a particular amount, Your Honor, as

19  to what it should be because in essence I am trying to be as

20  scientific as possible in my swan song.

21         So the way I am trying to calculate this out is if

22  there is a 120 month guideline, that would be a level 32, and

23  if you added the four points being added on that would be a

24  level 36, which would be 188 month or 14 years.

25

Although I concede the two points for being captain are legally supportable I think what should be taken into consideration is what he did to be the captain; which was not something where he was recruited because of some special skill that he had.

And I would also ask that Your Honor take into account the fact that three of the others who were recruited and also in possession of these drugs -- one of them and I forgot who it was -- was in charge of the original boat that had the drugs on it.

And so using that formula I would recommend a sentence between the 120 and the 188 months.  He will be in a facility where he will not really be able to do very much because of his Immigration status.

He will be away from his family where he will have no family support, so in some sense we get the cannon fodder and never seem to get the cannon.

In the early days of my practice I recall when people who did this at least there was some support from the people that sent them out there.

That does not exist anymore so the family is left without a breadwinner; and who knows what is going to happen to them.  He will not be home for a lengthy period of time; and so I would ask that Your Honor take that into account as well.

10:15  1          So based on all of that, Your Honor, I think that is

10:15  2     sufficient but not more than necessary for what he did in this

10:15  3     case.    Thank you.

10:15  4          THE COURT:  Thank you, Mr. Blumenfeld.

10:15  5          All right. Mr. Quencer.

10:15  6          MR. QUENCER: Your Honor, first of all, we did our very

10:15  7     best to get the witness here today.  At every step of the way I

10:15  8     verified that the requests had been made.  And the ultimate

10:16  9     result, for whatever reason, is there is no witness here today.

10:16  10          THE COURT:  I understand.

10:16  11          MR. QUENCER:  Obviously Your Honor sat through the

10:16  12     trial, and you have read the transcripts that Ms. Sanders so

10:16  13     ably supplied, so Your Honor has all the information you need

10:16  14     in order to make a fair determination of the sentence in this

10:16  15     case.

10:16  16          And I will preface this by saying if the number I give

10:16  17     disagrees with what Your Honor believes is the right number

10:16  18     then obviously it is Your Honor who is empowered with the

10:16  19     ability to levy the sentence you believe appropriate.

10:17  20          That said, when I think of what a sentence needs to

10:17  21     accomplish -- and thankfully the 3553 factors do a fairly good

10:17  22     job of laying out what a sentence is supposed to accomplish.

10:17  23          It obviously needs to reflect the seriousness of the

10:17  24     offense. That sort of flows into the real purpose of the

10:17  25     sentence which is to deter this person and deter others as well

as protect the public from the actions of this person as well
as similarly situated people that are considering becoming
involved in this type of criminal activity at some point.

As to the seriousness of the offense, looking at the
offense itself, Your Honor, this was extremely serious.  There
were 647 kilograms onboard this vessel, which is approximately
$19,000,000 worth of cocaine, and that is wholesale.

The wholesale price of a kilogram here in the United
States is approximately 30,000 -- which is before it is even
repackaged and cut with other substances and before it is sold
to the consuming public in much, much smaller amounts.

This is just an enormous amount of cocaine on these
boats that were all headed here to this country, which is
ultimately going to do an incredible amount of damage in our
community and communities all over the United States.

And, Your Honor, of course sees very sympathetic
defendants before you all the time because of these drugs in
our community.

And literally you have here this one boat where if
this trip is successful and the cocaine reaches the United
States it can distribute millions of doses of cocaine to the
consuming public.

And that obviously has a deleterious effect on our
society. So the offense is very, very serious; none of which I
am asking Your Honor to hold Mr. Alvarez Martinez responsible

for. But the secondary effects of this cocaine reaching the United States where it goes into these local distribution networks, which are extraordinarily violent, again has a very deleterious effect on not just our community here in Miami but other communities throughout the country.

We look at the shootings here in Miami which are drug related and which we are quite familiar with -- and if we look at Chicago, just this month there were 66 people who were shot in Chicago between August fourth and fifth.

Again, I am not asking that this be held against this defendant -- he obviously has no part in that violence -- but I am just highlighting that to the Court in terms of why this offense is so serious.

Which is why, Your Honor, we are even there off the Coast of Guatemala trying to intercept these loads before they reach land because of the effects that we know will be felt in this country because of these drugs.

As far as the defendant's history and characteristics, we don't have much of a history. We know he has three children and that he was employed as a fisherman and had some other jobs where he reported to Probation that he made $20 a day.

He also reported having a happy childhood in a lower socio-economic background where his parents were never married and separated when he was a kid. So, we do know that about the defendant.

And we also know who the defendant is by his actions in this case. And this defendant made it abundantly clear who he is. Because he is not just some fisherman from Ecuador who was simply put on a boat with a load of cocaine and sent north with a hope and prayer he would get there safely.

And we know that because of the testimony that was given during the trial. What do we know? We know that he was the captain of the boat and that he was very much in charge.

We know that because he is the person that Mr. Bautista testified passed the code when he first approached the boat; huevo de velo.

So, he was the one giving the instructions to load the boat with the cocaine. He was at the controls of the vessel, but not only was he the guy at the controls he was very much in charge.

And he told Bautista he had a big boss in Guatemala who was capable of getting him released if he just told the lie that he asked Bautista to tell.

So he is a part of a drug trafficking organization and he believes that he has the pull with his boss to get everyone released if they only tell the lie that he asked them to tell.

And let's look at other of his actions. Because when given the opportunity to surrender to the helicopter being piloted by the Coast Guard he chose not to do so and continued to flee from the Coast Guard.

And he continued to flee even after the helicopter shot out warning shots, and only stopped when the Coast Guard shot out the engines to the boat.

And that demonstrates who he really is; because he continues fleeing until the last minute when he can no longer flee.

Even after the boat is stopped the testimony is he pulled the plug at the bottom of the boat trying to sink the boat, putting the safety of those on the boat at risk, and thankfully Mr. Bautista prevailed upon him to put the plug back in.

I want to move now to the defendant's behavior once he was in the custody of the Coast Guard; because once he was taken into custody he embarked on a campaign of obstruction.

Once onboard the first cutter he told Mr. Bautista that he needs to tell the authorities that he was just out there to rescue him -- that he was out fishing and he happened upon someone waving a shirt in the air 300 miles out to sea and rescuing him and his cocaine.

And something else tells you who he is -- because this was not just one desperate attempt to tell his codefendants let's get our stories straight; this was something that went on as they transferred from boat to boat.

Bautista testified they were transferred to several different boats and on each occasion this defendant renewed his

pleas to Bautista to lie to the authorities.  In all I think
that Mr. Bautista estimated the defendant told him to tell this
lie 10 to 13 times.

          And finally, Your Honor, in this courtroom -- and he
had every right to put the Government to its burden and the
Court should not hold that against him.

          But he does not have the right to take the stand and
lie about every single thing that happened on this journey
which was material to this case.

          This defendant continued to embark on this campaign of
obstructing justice in trying to convince his codefendants to
refuse to cooperate with the Government and by telling them to
lie.

          And that is a red line, Your Honor, that I believe has
to be punished so that others are deterred from this same type
of behavior.

          This is a serious offense, Your Honor, and we need to
deter people from committing this type of crime. I have already
discussed with Your Honor what a deleterious effect this has in
the communities of our country.

          So this is obviously a very serious offense. This
defendant has never accepted responsibility in this case and is
going to continue to act outside of the law.

          And it is sort of like if someone is driving up your
street and swerves and hits your mail box and then stops and

1    says, I am so sorry, I was looking at a text message from my

2    child and I did not mean to do it.

3            As opposed to someone that hits your mail box and then

4    continues on down the street where you neighbor happens to

5    capture it on their cell phone and they have this person's

6    license plate number as well as them driving the car.

7            And you go to confront that person and they say, no,

8    it was not me driving the car; despite the fact that someone

9    has caught it on their cell phone.  So, that person is not

10   really remorseful for what they did and might do it again.

11           And so based upon all of the evidence that was

12   presented during this trial, as well as what the defendant

13   continued to do before and after trial -- because deterrence is

14   important as well as the protection of the public.

15           This defendant is someone we need to protect the

16   public from. He is not someone who is going to stop; he has not

17   given any indication that when he goes back to Guatemala he is

18   going to do anything but this same thing again.

19           So, given all of those 3553 factors the Government

20   believes that a sentence of 240 months, 20 years, sends the

21   proper message and is the appropriate sentence in this case.

22           Thank you, Your Honor.

23           THE COURT:  Thank you, Mr. Quencer.

24           Mr. Blumenfeld.

25           MR. BLUMENFELD: Your Honor, I first want to address

09:21   1    the seriousness of the offense and the impact of drugs. Because

09:21   2    many years ago I made those very same arguments when I was a

10:34   3    prosecutor.

10:34   4          However, that same impact and the same seriousness

10:34   5    applied to everybody that went on this trip, including those

10:34   6    that were in direct contact with at least the middle management

09:34   7    types that recruited and paid them.

09:34   8          And in one case -- actually in Mr. Ortiz' case -- it

10:34   9    was family members of Mr. Ortiz.

10:34   10         I don't know what the sentence was in that case but I

10:34   11   know the sentences of the three that have been sentenced range

10:34   12   from 120 months for a defendant who will get a Rule 35, and

10:34   13   presumably will be less, to Mr. Bautista's 24 months.

10:35   14         Each one of them received a significant -- would have

10:35   15   received a significant sum of money had this trip gone through.

10:35   16   They got on those boats to do the very same thing that my

09:35   17   client stands convicted of.

09:35   18         So everything that was said about him with respect to

10:35   19   the seriousness of the offense applies across the board.

10:36   20         And when it comes to deterrence certainly everybody

10:36   21   that gets caught gets a sentence that has some component of

10:36   22   deterrence.

10:36   23         But the real deterrence to stop six hundred and some

09:36   24   odd kilograms of cocaine from coming into the country and doing

10:36   25   all the damage that counsel correctly states would be to do

16

10:36  1    something about the people who are sending it in; the kingpins

10:36  2    or whatever you want to call them.

10:36  3          My experience in other cases -- because we certainly

09:36  4    have had our share of debriefings -- nine times out of ten the

09:36  5    DEA knows more about what is going on down there than the boat

10:36  6    people that are transporting it.

10:37  7          And we obviously know some of the names from the

10:37  8    debriefings of the other defendants.  And so I think that a

09:37  9    sentence of 20 years, which exceeds 90 percent of the sentences

09:37  10   of people involved in major Medicare fraud cases other than the

10:37  11   very top, is much more than is necessary to accomplish the

10:37  12   goals of sentencing in this case.

10:37  13         So, Your Honor, I stand by the recommendation that I

10:37  14   made earlier. Thank you.

10:38  15         THE COURT:  Thank you, Mr. Blumenfeld. Mr. Alvarez

16   Martinez, I am sure your attorney has talked to you and has

17   explained to you what would happen here today and that you

18   would have the opportunity to address the Court.

19         You may take as long as you need, you can talk to Mr.

20   Blumenfeld before or any time during, but if you have something

10:38  21   to share with the Court now would be the time.

10:38  22         THE DEFENDANT:  The only thing I want to say is for

10:39  23   you to be fair with my sentence because there is a God over all

10:39  24   of us and there are witnesses here that are lying.

10:39  25

10:39  1       And since we came over here, all of these six months,

10:40  2  for months we were in the same cells and we would all go down

10:40  3  and talk to the attorneys; and they would say you need to take

10:40  4  responsibility for these drugs.

10:40  5       And they would say if not we are going to go to trial

10:40  6  and we are going to testify against you.  They would tell me to

10:41  7  take responsibility for the drugs and if not they are going to

10:41  8  testify against me.

10:41  9       And they say they are going to give us $15,000 each

10:41  10  and they are only going to give us 50 to 60 months in jail; and

10:41  11  if not you will go to trial and we will testify against you.

10:41  12       And what I said is I can't take responsibility for the

10:41  13  drugs because I did not do it. I told them I could not take

10:41  14  responsibility because it was not mine.

10:41  15       They said they were going to testify against me and

10:41  16  they were going to lower their sentences because of that; and

10:41  17  that I would have to go to trial.

10:42  18       And when I spoke to Detective Rafael and I said if you

10:42  19  suspect what I am saying is not true -- and to see if what they

10:43  20  are saying is true.  And they said to sign this piece of paper

10:43  21  so you don't have to go to trial; so I signed it.

10:43  22       And two days later they tell me I have court; and when

10:43  23  I get to court they then tell me that the trial is already set.

10:43  24  So that is what happened.  They asked for us to be separated --

10:44  25  to be separated to a different floor -- and so they did not

separate us. And then they said -- what they said to me is we

are going to break you down; we are going to break you down

because you did not take responsibility for the drugs.

That is what I told Detective Rafael the second time

he came down to see me.  I told him that I was not responsible

for that boat, the boat was my brother's, and the only thing I

did was to try to protect those people's lives.

That's really all I want to say; and for you to be

fair with my sentence. I knew the drugs were in the boat, but

at no time did I want to come to this country.

I wanted to take the drugs to Guatemala. They wanted

the drugs to make it to land, but that's it. That's everything

I have to say.  Thank you very much.

THE COURT:  Thank you, Mr. Alvarez Martinez. The Court

has considered the statements and the recommendations of the

parties, the presentence report which contains the advisory

guidelines and the statutory factors set forth in 18 United

States Code 3553(a).

It is the finding of the Court that the defendant is

not able to pay a fine therefore no fine will be imposed.

As to the 3553 factors, and they are in no particular

order, the guideline range I do not believe is consonant with

the directives that I impose a sentence that is sufficient but

not greater than necessary to reflect the seriousness of the

offense and purposes of 3553(a)

I don't think Mr. Blumenfeld challenges that, and certainly the Court does not do anything in that regard except adopt Mr. Quencer's assessment that the amount of cocaine being brought potentially into the United States on this boat could have catastrophic consequences for its consumers.

However, I am not certain that I agree necessarily with the paradigm of Chicago violence as illustrative of the need for the Court to impose a sentence that would deter persons from engaging in any type of crime or those issues that Mr. Quencer pointed out in Chicago and here in Miami.

I do not believe there is a direct correlation of this particular load and the type of havoc that is being wreaked in Chicago, which I believe is sui generis, and which has a very troubled history with community and law enforcement.

Sadly, I don't think the guidelines or this particular statutory scheme take into account the fact that the sentences imposed here may never deter persons from doing what it is Mr. Alvarez Martinez did because the underlying impetus is abject, crippling, unabated poverty.

And the fact, as Mr. Blumenfeld argued earlier, the cannon considers these people fungible. And I don't know that anything I say or do will change that.

And so I must look to other cases to assist me in fashioning a sentence that is appropriate and that is a guided variance that will address the issues the parties have raised.

10:50  1      I have studied the recent cases from the 11th Circuit

10:50  2  in other situations where there were similarly situated persons

10:51  3  prosecuted under this particular statute.

10:21  4      The first is in Mariano Blando, which is a 2006 case,

10:51  5  where a captain was given 135 months -- granted that was a

10:51  6  plea -- he was the registered captain on a boat that had

10:51  7  brought in approximately four tons of cocaine on three

10:51  8  different ships.

10:51  9      Then there was Guevara; 423 Fed App'x 684; that was

10:51  10  January of this year.  Again a plea; where the gentleman was

10:51  11  onboard a vessel with 760 kilos where he received 168 months.

10:51  12      Cortez Gongora, another plea, 727 Fed App'x, 516

10:52  13  kilos, 168 months.

10:52  14      The case I am looking to for some real direction is

10:52  15  United States versus Moscarra, 886 F.3d 1032.  In that case

10:52  16  three of the boat participants went to trial, including the

10:52  17  captain,  with  a similar amount of cocaine.

10:52  18      The guidelines ranged there from a 38 to a 40 for the

10:52  19  captain with the two level enhancement. In Moscarra the amount

10:52  20  was 1,700 kilos. Again, it was a boat that had brought in

10:52  21  cocaine on prior occasions.

10:52  22      Several of the crew members apparently engaged in the

10:52  23  type of behavior Mr. Quencer notes here; that is threatening or

10:53  24  trying to get others to change their testimony.

10:53  25

And in that case the boat had a very sophisticated hidden compartment, which suggested a level of understanding and involvement by the crew.  And I think it was twice they had come in with loads; which we don't have here.

In that case the three people who went to trial received a sentence of 235.

The focal point of my sentence, and why I am fixing it at the place I am, is Mr. Alvarez Martinez's endeavor to interfere with the due administration of justice in this case.

He had a veteran capable lawyer assisting him and so he could not have been confused about what his overtures to others meant for this case.

In light of that, but measuring this sentence against the sentences meted out in United States versus Moscarra, it is therefore the judgment of the Court that the defendant Julio Cesar Alvarez Martinez is comitted to the Bureau of Prisons to be imprisoned for a term of 192 months as to each of Counts 1 and 2, both to run concurrently.

Upon release from imprisonment defendant shall be placed on supervised release for a term of five years. This term consists of five years as to Counts 1 and 2; again to run concurrently.

Within 72 hours of release the defendant shall report in person to the Probation Office in the district where released.

10:55  1          While on supervised release the defendant shall comply

2    with the mandatory and standard conditions of supervised

3    release; including not committing any crimes, being prohibited

4    from possessing a firearm or other dangerous device or weapon,

5    not unlawfully possessing a controlled substance, cooperation

6    in the collection of DNA.

7          The defendant shall also comply with the following

8    special conditions: He must immediately surrender to

10:55  9    Immigration for removal proceedings.

10:55 10          He shall also immediately pay to the United States a

10:56 11    special assessment of $100.

10:56 12          Total sentence 192 months in prison, five years

10:56 13    supervised release and a $100 special assessment.

10:56 14          Now that sentence has been imposed, does the defendant

10:56 15    or counsel object to the Court's findings of fact or the manner

10:56 16    in which sentence was pronounced?

10:56 17          MR. BLUMENFELD: No, Your Honor.

10:56 18          THE COURT:  Mr. Alvarez Martinez, you have the right

10:56 19    to appeal the conviction and sentence imposed.  Any notice must

10:56 20    be filed within 14 days after the entry of judgment.

10:56 21          If you cannot afford to pay for the appeal you may

10:56 22    apply for leave to appeal in forma pauperis.  Meaning the Court

10:56 23    will appoint an attorney to represent you.

10:56 24          Mr. Quencer, is there anything further on behalf of

10:57 25    the United States or Mr. Martinez?

10:57  1     MR. QUENCER: Two things, Your Honor.  First, this

10:57  2  defendant was apprehended on August 31st, 2017, and so I

10:57  3  believe that is the date that should be noted in terms of the

10:57  4  calculation for the time he has served in this case.

10:57  5     And second, as to my colleague defense counsel, it is

10:57  6  my understanding he is retiring today and that he has served as

10:57  7  an officer of the Court for 51 years.

10:57  8     Having worked with him on this case I would like to

10:57  9  state for the record that he is a consummate gentleman.  He has

10:57 10  been a zealous advocate on behalf of his client -- which is of

01:55 11  course what this system requires.

01:55 12     I get the glory in many of these types of cases.  But

01:55 13  as I know from my time as defense counsel in the Navy his role

01:55 14  is a critical part of our System of Justice.

10:57 15     He not only fought hard for his client in this case,

10:57 16  but he did it in a respectful and gentlemanly manner.  And I

10:58 17  wish him all the best and thank him for his 51 years of

10:58 18  service.

10:58 19     THE COURT:  Thank you, Mr. Quencer. You prompt me to

10:58 20  say what I should have said earlier; thank you, Mr. Blumenfeld,

10:58 21  for being on the panel and for all of your years of service.

10:58 22     I have had the pleasure of working with you and

10:58 23  against you for many years, and it is a privilege to be able to

10:58 24  say that your last case was in front of me.

10:58 25

10:58    1          Mr. Alvarez Martinez, I know no sentence can be viewed

10:58    2    by you as anything other than what it is, but you did have an

10:59    3    extraordinary lawyer helping you.

10:59    4          MR. BLUMENFELD: I appreciate everything you have said,

10:59    5    and Mr. Quencer as well. It is time to move on. I started my

10:59    6    career in Federal Court and I am ending it in Federal Court. I

10:59    7    started as a law clerk; so I have come a long way.

10:59    8          THE COURT:  You don't look a year over 30.

10:59    9          MR. BLUMENFELD:  Thank you, Your Honor.

10:59   10          THE COURT:  Any recommendation on behalf of Mr.

10:59   11    Alvarez Martinez in terms of a designation?

10:59   12          MR. BLUMENFELD: No, Judge.  I would ask that Your

10:59   13    Honor permit me to withdraw at this time; but if I could make a

10:59   14    suggestion as to who to appoint for the appeal.

10:59   15          THE COURT:  Yes.

10:59   16          MR. BLUMENFELD: I would ask that you appoint Mr.

11:00   17    Mauricio Aldazabal. I can get him the file and get him up to

11:00   18    speed faster than waiting for someone to get appointed.  And

11:00   19    hopefully that should make the appellate process move along

11:00   20    faster.

11:00   21          THE COURT:  I will grant your request and appoint Mr.

11:00   22    Aldazabal as appellate counsel.

11:00   23          MR. BLUMENFELD: Thank you, Your Honor.

11:00   24          THE COURT:  Mr. Martinez, I have appointed Mauricio

11:00   25    Aldazabal who is a very experienced and capable lawyer who has

11:00  1    been doing this for many years. Mr. Blumenfeld is going to meet

11:00  2    with him and go over the file so that Mr. Aldazabal can take

11:00  3    over your case for appeal.

11:00  4            MR. BLUMENFELD: I will speak to Mr. Aldazabal and

11:00  5    bring him up to speed as soon as I get back to the office.

11:00  6            THE COURT:  Again, I would like to thank both sides

11:00  7    for their presentations and their professionalism in this case.

       8            And, Mr. Blumenfeld, I thank you for your service and

       9    wish you the best in your next endeavor.

      10            MR. BLUMENFELD: Thank you, Your Honor.

      11            THE COURT:  We are adjourned.

      12                    HEARING CONCLUDED

      13

      14

      15

      16

      17

      18

      19

      20

      21

      22

      23

      24

      25

1                         -   -   -

2                   C E R T I F I C A T E

3          I hereby certify that the foregoing is an accurate

4     transcription of proceedings in the above-entitled matter.

5

6                                        /S/PATRICIA SANDERS

7     _____                  _____

8     DATE FILED                       PATRICIA SANDERS, RPR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25